UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| J. FLETCHER CREAMER & SON, INC., and CREAM RIDGE CONSTRUCTION CO., INC. | : | Civil Action No. 19-21638 (ES) (MAH) |
| Plaintiffs, | : | |
| v. | : | |
| HISCOX INSURANCE COMPANY INC., | : | OPINION |
| Defendants. | : | |

I. **INTRODUCTION**

This matter comes before the Court by way of Defendant Hiscox Insurance Company Inc.'s ("Hiscox") "Partial Motion to Dismiss Pursaunt to F.R.C.P. 12(b)(6) and to Sever and Stay Plaintiff's Bad Faith Claims." The Court has also reviewed the parties' letter memoranda regarding the scope of discovery to be completed pending the adjudication of Hiscox's Motion. The Court has decided Hiscox's Motion without oral argument. *See* Local Civ. R. 78.1(b). For the reasons set forth below, the Court will stay Count Three of the Complaint pending the resolution of Plaintiffs' breach of contract claims, and will deny Hiscox's partial motion to dismiss Plaintiffs' prayer for punitive damages without prejudice.

II. **BACKGROUND**

This is an insurance coverage dispute arising from Hiscox's alleged failure to indemnify and reimburse defense costs incurred by Plaintiffs J. Fletcher Creamer & Son, Inc. ("J. Fletcher") and Cream Ridge Construction Co., Inc. ("Cream Ridge") in an underlying lawsuit (the "Nuno

Costa Matter") pursuant to a Private Company Management Liability Insurance Policy (the "Policy"). *See* Notice of Removal,. Ex. A ¶¶ 1-2, 14, 17, Dec. 19, 2019, D.E. 3-1 ("Compl.").

In a letter dated November 2, 2017, Hiscox "substantially denied coverage" under the Policy. *Id.* ¶ 26; *see also* Cert. of Steven J. Pudell, Esq. in Supp. of Pls.' Opp. to Def.'s Mot. ("Pudell Cert."), Ex. C, Feb. 4, 2020, D.E. 9-4. Hiscox stated that (1) coverage was unavailable for J. Fletcher under the Employment Practices Liability ("EPLI") portion of the Policy because the claims were not first asserted during the Policy period, *see* Pudell Cert., Ex. C, D.E. 9-4 at 6; (2) subject to a reservation of rights, there was partial coverage for the individual defendants named in the complaint and for Cream Ridge, *see id.*, D.E. 9-4 at 6-10; and (3) "Hiscox will seek an allocation between the covered and uncovered portions of the Nuno Costa Matter complaint allegations against the Individual Insured and Cream Ridge and will likewise seek an allocation to the extent that defense counsel represents the Individual Insureds and Cream Ridge as well as [J. Fletcher]," *id.*, D.E. 9-4 at 2-3; *see also* Pudell Cert., Ex. A, D.E. 9-2 at 96-97 (prescribing manner of allocation for a Claim that includes both covered and non-covered matters).

Plaintiffs retained Gibbons P.C. to represent them in the Nuno Costa Matter. *See* Compl. ¶ 27. Plaintiffs allege that the Policy required Hiscox to advance defense costs irrespective of Hiscox's ultimate coverage determination. *See id.* ¶¶ 6, 20. Plaintiffs rely on the following language from the Policy:

> [w]hen the **Insurer** has not assumed the defense of a **Claim** pursuant to this Clause V., the **Insurer** nevertheless shall advance, at the written request of the **Insured**, **Defense Costs** prior to the final disposition of a **Claim**. Such advanced payments by the **Insurer** shall be repaid to the **Insurer** by the **Insureds**, severally according to their respective interests, in the event and to the extent that the **Insureds** shall not be entitled under the terms and conditions of this **EPLI Coverage Part** to payment of such **Loss**.

2

*Id.* ¶ 19 (emphasis in original).   Plaintiffs aver that, despite the foregoing, Hiscox failed to forward the defense costs incurred in the Nuno Costa Matter and caused Hiscox to fund the entirety of its defense during the pendency of the suit.  *See id.* ¶¶ 5, 21, 36.

Following the filing of a six-count amended complaint in the Nuno Costa Matter, Hiscox supplemented its coverage position.  *See id.* ¶¶ 31-34.  In a letter dated December 10, 2018, Hiscox asserted that "because vast majority of the . . . allegations and Counts [in the amended complaint] do not allege Employment Practices Violations and/or are otherwise excluded from coverage under the EPLI Coverage Part, Hiscox is entitled to a *substantial* allocation of Defense Costs between the covered and uncovered allegations contained in the [amended complaint], as well as to account for the allegations against [J. Fletcher] for which is no coverage is afforded under the EPLI Coverage Part . . . ."  Pudell Cert., Ex. D., D.E. 9-5 at 5 (emphasis in original).

Between March and November 2019, the parties exchanged a series of letters pertaining to the status of the Nuno Costa Matter and Hiscox's coverage obligations, including the proposed allocation.  *See* Compl. ¶¶ 38-56.  By way of an email dated August 2, 2019, Hiscox offered to pay 10% of Plaintiffs' reasonable defense costs, which it deemed to be $410,080.70.  *See id.* ¶¶ 45-46; Pudell Cert., Ex. E, D.E. 9-6.  Hiscox explained that only one count in the amended complaint came within the purview of the EPLI Coverage Part.  *See* Pudell Cert., Ex. E, D.E. 9-6 at 2.  In reaching the 10% figure, Hiscox explained that its "proposed allocation is . . . based upon the complete absence of coverage for one defendant, as well as the fact that the work on the uncovered counts is significantly greater than the work on the one covered count."  *Id.*  As for the reasonableness of the defense costs to date, Hiscox noted that it had received "invoices totaling $985,018.83 for time entries through 3/31/19."  *Id.*, D.E. 9-6 at 3.  Hiscox arrived at the

3

$410,080.70 figure "[a]fter making reductions for pre-notice costs and hourly rates above Hiscox's rate caps of $365 for partners, $295 for associates and $110 for paralegals." *Id.* Based on the foregoing figures, Hiscox concluded Plaintiffs had not satisfied the $75,000 deductible. *See* Compl. ¶¶ 45-46.

Plaintiffs settled the Nuno Costa Matter on September 9, 2019. *Id.* ¶ 50. About one week later, Plaintiffs again demanded payment of its defense costs and indemnity from Hiscox. *Id.* ¶ 53. Plaintiffs followed up on their demand on October 10, 2019. *Id.* ¶ 55. On November 5, 2019, Hiscox reiterated its position that Plaintiffs had not satisfied the deductible based on the proffered allocation. *See id.* ¶ 56. Ultimately, Hiscox did not advance any sums towards Plaintiffs' defense or the settlement reached in the Nuno Costa Matter. *Id.* ¶¶ 37, 59.

Plaintiffs filed this three-count Complaint on November 21, 2019.[1] Count One sets forth a claim for breach of contract in connection with the advancement and reimbursement of defense costs. *See id.* ¶¶ 60-65. Count Two alleges breach of contract in connection with Hiscox's duty to indemnify Plaintiffs for the settlement of the Nuno Costa Matter. *See id.* ¶¶ 66-71. Count Three alleges a claim for breach of the implied covenant of good faith and fair dealing, and appears to have two components. *See id.* ¶¶ 4, 72-80. Plaintiffs allege that Hiscox failed to deal fairly and in good faith with Plaintiffs when it refused to advance or reimburse Plaintiffs' defense costs for the three years that the Nuno Costa Matter was pending. *See id.* ¶¶ 5-6, 75-77. Plaintiffs also allege that "Hiscox further breached its duty of good faith and fair dealing by unreasonably and unfairly offering to pay only 10% of legal fees, an allocated share that Hiscox knew would likely

---

[1] Plaintiffs filed this action in the Superior Court of New Jersey, Law Division, Bergen County. *See* Notice of Removal ¶ 1, Dec. 19, 2019, D.E. 3. Hiscox removed the action to this Court on the basis of jurisdiction conferred by 28 U.S.C. § 1332(a). *See id.* ¶¶ 7-15; 28 U.S.C. § 1441(b).

4

absolve it from reimbursing any defense costs to Plaintiffs." *Id.* ¶ 78. In conjunction with that contention, Plaintiffs aver that Hiscox "unfairly and unilaterally discount[ed] the amount of fees incurred by Plaintiffs by more than 50%" based on Hiscox's allegedly incorrect position that the fees were "not reasonable." *Id.* ¶ 79; *see also* ¶ 58. In addition to compensatory damages and other relief, Plaintiffs seek punitive damages in connection with Count Three. *See id.* ¶ 80; Wherefore Clause.

On January 8, 2020, Hiscox moved for Order dismissing Plaintiffs' prayer for punitive damages in Count Three pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, as well as severing and staying Count Three pursuant to Rule 21. *See* Def.'s Partial Mot. to Dismiss and to Sever and Stay Pls.' Bad Faith Claims, D.E. 6. The parties appeared before the Court for the initial scheduling conference on April 6, 2020. *See* Local Civ. R. 16.1(a). Because the parties disputed the appropriate scope of discovery pending the adjudication of Hiscox's Motion, the Court requested letter memoranda outlining their positions. *See* Order, Apr. 6, 2020, D.E. 23; Def.'s Discovery Letter, Apr. 24, 2020, D.E. 25; Pls.' Discovery Letter, Apr. 24, 2020, D.E. 26.

### III.    ANALYSIS[2]

The Court does not write on a blank slate when it comes to the procedural and substantive issues presented here. It is well-settled that all contracts, including insurance policies, "impose an implied obligation of good faith and fair dealing in their performance and enforcement." *Badiali v. New Jersey Mfrs. Ins. Grp.*, 107 A.3d 1281, 1287 (N.J. 2015); *see also Pickett v. Lloyd's*, 621 A.2d 445, 450 (N.J. 1993) (holding that insurers owe a duty of good faith in processing first-

---

[2] The parties have consented to the Undersigned's jurisdiction over this motion pursuant to 28 U.S.C. § 636(c). *See* Consent Order, May 15, 2020, D.E. 32.

party claims). A breach of the implied covenant of good faith and fair dealing, which is synonymous with a bad faith claim, focuses on the conduct of the insurer in its review and processing of a claim under an existing policy. *See Laing v. Am. Strategic Ins. Corp.*, No. 14-1103, 2014 WL 4953250, at *2 (D.N.J. Oct. 1, 2014). It is a distinct cause of action from a policyholder's breach of contract claim against an insurer. *See Bayshore Recycling Corp. v. ACE Am. Ins. Co.*, No. 19-21618, 2020 WL 1986486, at *2 (D.N.J. Apr. 27, 2020) ("The 'breach of insurance contract claims concern policy coverage while bad faith claims concern the insurer's general claims handling procedures, its claims conduct in the case at issue, and its knowledge and state of mind about the grounds for denial of coverage.'" (quoting *Spectrum Data Sys., LLC v. State Farm Ins. Co.*, No. 18-10318, 2019 WL 259605, at *2 (D.N.J. Jan. 18, 2019))).

Coverage is a necessary precondition to maintaining a bad faith claim predicated on a denial of benefits. *See Wacker-Ciocco v. Gov't Employees Ins. Co.*, 110 A.3d 962, 968 (N.J. Sup. Ct. App. Div. 2015) ("If the insured is unable to establish a right to the coverage claimed, the bad faith claim must be dismissed."). Beyond the mere existence of coverage, "the plaintiff must show 'that no debatable reasons existed for denial of the benefits.'" *Badiali*, 107 A.3d at 1288 (quoting *Pickett*, 621 A.2d at 457). Under the "fairly debatable" standard, "a claimant who [cannot] establish[] as a matter of law a right to summary judgment on the substantive claim [cannot] . . . assert a claim for an insurer's bad faith refusal to pay the claim." *Id.* (quoting *Pickett*, 621 A.2d at 454). In other words, "a question of fact permits an insurer to 'fairly debate' an insured's claim." *Tarso v. Provident Ins. Co.*, 108 F. Supp. 2d 397, 401 (D.N.J. 2000) (citing *Pickett*, 621 A.2d at 454). "If factual issues exist as to the underlying claim (i.e., questions of fact as to whether plaintiff is entitled to insurance benefits—plaintiff's first cause of action), the Court

6

must dismiss plaintiff's second cause of action—the 'bad faith' claim." *Id.* (citing *Pickett*, 621 A.2d at 454); *see also Wacker-Ciocco*, 110 A.3d at 968. To ultimately prevail, the plaintiff must also establish "the defendant's knowledge or reckless disregard of the lack of a reasonable basis in denying the claim." *Prod. Source Int'l, LLC v. Foremost Signature Ins. Co.*, 195 F. Supp. 3d 660, 666 (D.N.J. 2016) (quoting *Pickett*, 621 A.2d at 453); *see also Wadeer v. N.J. Mfrs. Ins. Co.*, 110 A.3d 19, 26 (N.J. 2015).

Bad faith can take the form of more than just improper denial of benefits. *See Badiali*, 107 A.3d at 1287-88 (noting that the New Jersey Legislature has attempted to codify what constitutes unfair claim settlement practices). "In the case of processing delay, bad faith is established by showing that no valid reasons existed to delay processing the claim and the insurance company knew or recklessly disregarded the fact that no valid reasons supported the delay." *Pickett*, 621 A.2d at 454-45. Although the "fairly debatable" and "unreasonable delay" tests apply in different circumstances, the analysis under both formulations is "essentially the same." *Pickett*, 621 A.2d at 454; *see also Onex Credit Partners, LLC v. Atrium 5 Ltd.*, No. 13-5629, 2014 WL 4798758, at *8 (D.N.J. Sept. 26, 2014).

### 1. A Stay of the Bad Faith Claim is Appropriate

The Undersigned first addresses how this case should proceed from a case-management perspective in light of Hiscox's request to sever and stay the bad faith claim. Def.'s Br. at 4-6, Jan. 8, 2020, D.E. 6-1. "Severing claims under Rule 21 is appropriate where the claims to be severed are discrete and separate in that one claim is capable of resolution despite the outcome of the other claim." *Ames v. USAA Life Ins. Co.*, No. 18-9865, 2018 WL 5634684, at *1 (D.N.J. Oct. 31, 2018) (quoting *Turner Const. Co. v. Brian Trematore Plumbing & Heating, Inc.*, No. 07-

Case 2:19-cv-21638-ES-MAH   Document 33   Filed 06/02/20   Page 8 of 15 PageID: 295

666, 2009 WL 3233533, at *3 (D.N.J. Oct. 5, 2009)). The effect of ordering severance is to separate the claims into "independent actions with separate judgments entered in each." *White v. ABCO Eng'g Corp.*, 199 F.3d 140, 145 n.6 (3d Cir. 1999) (internal quotation marks omitted). On the other hand, this Court can bifurcate claims for discovery and trial pursuant to Rule 42(b). *See id.*; Fed. R. Civ. P. 42(b). "Courts consider the same factors in deciding a motion to sever under Rule 21 as they do in resolving a motion to bifurcate under Rule 42(b)." *Twin City Fire Ins. Co. v. Ovation Fund Servs., LLC*, No. CV 18-14944, 2019 WL 1275060, at *2 (D.N.J. Mar. 20, 2019) (quoting *Mulgrew v. Gov't Employees Ins. Co.*, No. 16-2217, 2017 WL 4540612, at *1 (M.D. Pa. Oct. 11, 2017)). Courts consider the following prior to making this discretionary determination:

> (1) whether the issues sought to be tried separately are significantly different from one another, (2) whether the separable issues require the testimony of different witnesses and different documentary proof, (3) whether the party opposing the severance will be prejudiced if it is granted, and (4) whether the party requesting severance will be prejudiced if it is not granted.

*Bayshore Recycling Corp*, 2020 WL 1986484, at *1; *see also Rodin Properties-Shore Mall, N.V. v. Cushman & Wakefield of Pa., Inc.*, 49 F. Supp. 2d 709, 721 (D.N.J. 1999) ("The decision to sever a claim or to try it separately is left to the discretion of the trial court.").

Given that the "fairly debatable" standard necessitates a ruling on coverage prior to the adjudication of a bad faith claim, courts in this district have opined that it is "[n]o surprise, then, that severance and stay of bad faith claims has been called the 'prevailing practice' in both the state and federal courts of New Jersey." *Port Liberte Homeowners Assocs., Inc. v. Lexington Ins. Co.*, No. 16-7934, 2017 WL 1528697, at *2 (D.N.J. Apr. 25, 2017) (quoting *Abiona v. GEICO Indem. Co.*, No. 15–6013, 2016 WL 1046791, at *4 (D.N.J. Mar. 16, 2016)); *see also Spectrum Data Sys., LLC*, 2019 WL 259605, at *2 ("It is common practice in both state and federal court to

8

sever 'breach of insurance contract claims from bad faith claims . . . and . . . [to] proceed[] with the bad faith claims [only] if necessary following the adjudication of the contract claim.'" (alterations in original) (quoting *Legends Mgmt. Co. v. Affiliated FM Ins.*, No. 16-1608, 2017 WL 4284491, at *2 (D.N.J. Sept. 26, 2017)); *cf. Wacker-Ciocco*, 110 A.3d at 969 (holding that "proof an insured is entitled to coverage as a matter of law is a necessary pre-requisite to pursuing discovery regarding a bad faith claim"); *Procopio v. Gov. Employees Ins. Co.*, 80 A.3d 749, 751-53 (N.J. Sup. Ct. App. Div. 2013) (holding that the trial court abused its discretion in ordering discovery to proceed simultaneously on an insured's claim for underinsured motorist benefits and bad faith claim).[3]

The Court first concludes that Plaintiffs' bad faith claim is significantly different than the breach of contract claims. Plaintiffs' bad faith claim turns in part on Hiscox's state of mind. *See Pickett*, 621 A.2d at 453-54. Hiscox's intent is wholly irrelevant to the otherwise straight-forward questions of whether Plaintiffs are entitled to the entirety of their defense costs and whether Hiscox correctly determined that only a few of the claims alleged in the Nuno Costa Matter were covered by the Policy. *See Ames*, 2018 WL 5634684, at *3 ("Plaintiff's bad faith discovery distracts from, and will undoubtedly delay, the resolution of the primary focus of the case, i.e., whether plaintiff's . . . claim should be paid."). This Court must first resolve those coverage issues. Even then, this Court can only reach the bad faith claim if it finds that there are no factual issues

---

[3] This Court is not bound by the Appellate Division's holdings on this procedural issue. *See Nat'l Union Fire Ins. Co. of Pittsburgh, PA. v. Becton, Dickinson & Co.*, No. 14-4318, 2018 WL 627378, at *6 (D.N.J. Jan. 30, 2018). "[T]his Court has refused to adopt a blanket rule that a plaintiff's bad faith claim should be severed in every coverage case" in recognition of the principle that "[e]very case is different and must be decided on its own facts." *Bayshore Recycling Corp.*, 2020 WL 1986486, at *1 (quoting *Ames*, 2018 WL 5634684, at *2).

9

pertaining to Plaintiffs' entitlement to coverage and the reasonableness of the defense costs. *See Badiali*, 107 A.3d at 1288; *Tarso*, 108 F. Supp. 2d at 401. Discovery on the bad faith claim should therefore wait until the question of coverage is resolved.

The Court next looks to what discovery will be required for each claim. The Court agrees with the overwhelming majority of courts that bad faith claims regularly demand different witnesses and documentary proof from breach of contract claims. *See, e.g.*, *Bayshore Recycling Corp*, 2020 WL 1986484, at *2 ("Discovery relating to claims personnel, claims handling procedures and guidelines, and best practices is not directly relevant to the contract claims . . . ."); *Ames*, 2018 WL 5634684, at *2 (stating that "classic 'bad faith discovery' such as information concerning defendant's claims handling policies and procedures, and the experience and work evaluations of its claims personnel . . . is irrelevant to plaintiff's . . . breach of contract claims").

This case is no different. Indeed, Plaintiffs intend to seek in discovery concerning, among other things, "[t]he entire underwriting file for the policy Hiscox sold to [Plaintiffs]"; "[a]ll documents and communications concerning the underwriting, drafting, selling, pricing, issuing, preparing, delivery or assembling of the Hiscox policy, sold by Hiscox to [Plaintiffs]"; "[a]ll documents and communications concerning Hiscox's intention or decision not to advance [Plaintiffs'] defense costs for the underlying claim, including, but not limited to, documents and communications that directly support Hiscox's decision not to advance [Plaintiffs'] defense costs"; and "[a]ll Documents and Communications, including, but not limited to, Claims Manuals, concerning the methodology that Hiscox would apply to allocating between allegedly covered and uncovered claims pursuant to New Jersey law under Hiscox's Private Company Management Liability Insurance Policies sold in 2015 and 2016." Pls.' Discovery Letter, D.E. 26 at 4-6.

Those categories of documents are largely irrelevant to the breach of contract claims, which hinge on whether the parties abided by the terms of the Policy.

Finally, the Court considers the prospect of prejudice to either party. This question ultimately is one of judicial economy. The Court concludes that the expedient resolution of the breach of contract claim best serves the interests of both parties as the expansive and contentious discovery necessitated by the bad faith claim may distract from the coverage questions at the foundation of this case. *See Bayshore Recycling Corp.*, 2020 WL 1986486, at *2 ("Judicial economy and efficiency will be promoted by avoiding potentially expensive and time-consuming discovery on the bad faith claim. Plaintiff's coverage claim should be the focus of the case at this time."); *Ames*, 2018 WL 5634684, at *3 ("If defendant has to litigate plaintiff's bad faith claim now, defendant would suffer a significant expenditure of time and money, generally rendered needless if it prevails" (internal quotation marks omitted)); *Wacker-Ciocco*, 110 A.3d at 966 ("It promotes judicial economy and efficiency by holding in abeyance expensive, time-consuming, and potentially wasteful discovery on a bad faith claim that may be rendered moot . . . ." (internal quotation marks omitted) (brackets removed)). Accordingly, the Court shall stay Count Three pending the resolution of the breach of contract claims.

### 2. Availability of Punitive Damages

Hiscox further submits that the prayer for punitive damages in Count Three must be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Mammana v. Fed. Bureau of Prisons*, 934 F.3d 368, 372 (3d Cir. 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim

'has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Sweda v. Univ. of Pa.*, 923 F.3d 320, 325 (3d Cir. 2019) (quoting *Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 147 (3d Cir. 2014)). The Court "must narrowly confine its inquiry to the allegations of the pleadings and their exhibits, matters of public record, and undisputedly authentic documents that form the basis of the claims." *EP Henry Corp. v. Cambridge Pavers, Inc.*, 383 F. Supp. 3d 343, 348 (D.N.J. 2019).

Because dismissal of a claim under Rule 12(b)(6) deprives the plaintiff of an adjudication on the merits without the benefit of discovery, the Court "construe[s] the complaint 'in the light most favorable to the plaintiff.'" *Sweda*, 923 F.3d at 325 (quoting *Santomenno ex rel. John Hancock Tr. v. John Hancock Life Ins. Co.*, 768 F.3d 284, 290 (3d Cir. 2014)). The Court's "job is not to dismiss claims that [it] think[s] will fail in the end," but only to decide whether Plaintiffs have pleaded "'enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of' each element." *United States ex rel. Bookwalter v. UPMC*, 938 F.3d 397, 405 (3d Cir. 2019) (third alteration in original) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). That said, "[p]leadings that establish only a mere possibility of misconduct do not show entitlement to relief." *Sweda*, 923 F.3d at 326.

"Through express statutory language, New Jersey provides that even gross negligence will not suffice to make punitive damages available." *In re Paulsboro Derailment Cases*, 704 F. App'x 78, 87 (3d Cir. 2017). The New Jersey Punitive Damages Act prescribes that

> [p]unitive damages may be awarded to the plaintiff only if the plaintiff proves, by clear and convincing evidence, that the harm suffered was the result of the defendant's acts or omissions, and such acts or omissions were actuated by *actual malice or accompanied*

12

> *by a wanton and willful disregard* of persons who foreseeably might be harmed by those acts or omissions.

N.J. Stat. Ann. § 2A:15-5.12(a) (emphasis added). In the specific context of a bad faith claim, punitive damages are unavailable in the absence of "egregious circumstances." *Pickett*, 621 A.2d at 455. "[W]rongful withholding of benefits" is not enough; "in order to sustain a claim for punitive damages, a plaintiff would have to show something other than a breach of the [insurer's] good faith obligation." *Id.* The burden to earn punitive damages is a heavy one: "the insured must show egregious circumstances and wantonly reckless or malicious conduct on the part of the insurer." *Daloisio v. Liberty Mut. Fire Ins. Co.*, 754 F. Supp. 2d 707, 710 (D.N.J. 2010).

Generally speaking, proof of intent and egregiousness are fact-specific issues that are "ill-suited for a motion to dismiss." *Id.* Accordingly, some courts have denied similar motions to the one at hand as premature at this stage of the litigation. *See, e.g.*, *id.*; *Laing*, 2014 WL 4953250, at *4 ("Because the question of determining the availability of punitive damages is a fact-specific inquiry, the Court declines to dismiss these allegations at this time."). Other courts have dismissed punitive damages claims on the basis that the complaint failed to allege facts from which the court could reasonably infer a plausible basis for such damages. *See, e.g.*, *Johnson v. Encompass Ins. Co.*, No. 17-3527, 2019 WL 2537809, at *2 (D.N.J. June 20, 2019) (dismissing claim for punitive damages on the basis that, "[a]s pled, Defendant's behavior does not rise to the level of egregiousness required for an award of punitive damages"); *Gillman v. Rakouskas*, No. 16-4619, 2017 WL 379433, at *3, n.5 (D.N.J. Jan. 26, 2017) (dismissing prayer for punitive damages because the complaint "is completely devoid of any facts that would allow the Court to reasonably infer that Defendants acted in a manner that could be classified as 'actual malice' or a 'wanton or reckless disregard' for others").

13

Hiscox contends that dismissal of the punitive damages claim is warranted because "there are no factual allegations in the Complaint that support a claim that Hiscox acted wantonly and with a willful disregard for Plaintiffs." Def.'s Br. at 2. Hiscox submits that the alleged breaches of the policy at issue "do[] not rise to the level of intentional wrongdoing necessary to pursue (and ultimately grant) punitive damages." Def.'s Reply Br. at 2, Feb. 11, 2020, D.E. 12. According to Hiscox, Plaintiffs have simply recast their breach of contract claims as a bad faith claim by alleging that "Hiscox acted wrongly by offering only to pay an allocated share of defense costs and indemnity." *Id.* at 4. Plaintiffs disagree. They submit they are entitled to discovery on whether Hiscox acted with malice in light of (1) Hiscox's refusal to advance defense costs; (2) Hiscox's significant reduction of defense costs despite there being no prior objection thereto; and (3) Hiscox's so-called "illusory" offer given that the reduced amount did not exceed the Policy's deductible. Pls.' Opp. Br. at 1, 10-11, Feb. 4, 2020, D.E. 9.

Assuming the truth of Plaintiffs' well-pleaded allegations, as this Court must at this stage of the litigation, the Court is satisfied that the aforementioned facts permit the reasonable inference that Hiscox's failure to advance defense costs at the outset of the Nuno Costa Matter, and ultimately take what was in effect a no-pay position, may have plausibly been motivated by malice. Plaintiffs' allegations, when considered as a whole, sufficiently distinguish this case from a garden-variety denial-of-benefits claim. The Court thus concludes that dismissal of the prayer for punitive damages is not warranted under Rule 12(b)(6). It remains Plaintiffs' burden to ultimately have to prove the existence of egregious circumstances and malice by clear-and-convincing evidence. Whether Plaintiffs' proofs are sufficient may be revisited on a summary judgment record or by the trier-of-fact during trial.

### IV. CONCLUSION

For the reasons set forth above, the Court will grant in part and deny in part Hiscox's Motion. An appropriate Order will accompany this Opinion.

>*/s Michael A. Hammer*
>**UNITED STATES MAGISTRATE JUDGE**

**Date:   June 2, 2020**